Filed 7/9/14  P. v. Dunlap CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM GEORGE DUNLAP,<br><br>    Defendant and Appellant. | C073437<br><br>(Super. Ct. Nos. 01F6562,<br>    00F3309) |

Defendant William George Dunlap was convicted by a jury of manufacturing methamphetamine and found by the trial court to have violated probation.  He contends: (1) "The court's refusal to dismiss [defendant's] 47-year-old prior strike was error, as it resulted in an unusually harsh and unconstitutional 18-year sentence on a 65-year-old man"; and (2) the court's imposition of certain fines and penalties violated the prohibition against ex post facto punishment.  The Attorney General concedes the latter point.  We conclude the trial court did not abuse its discretion in declining to strike the prior conviction and defendant has failed to show his sentence is disproportionate or unconstitutional.  As to the fines and penalties, we conclude several fines must be stricken because the fines became effective after defendant committed the crimes for which he was sentenced here.  Accordingly, we strike the challenged fines and penalties and affirm the judgment as modified.

1

FACTUAL AND PROCEDURAL BACKGROUND

*Prior Strike Conviction*

In 1966 when defendant was 18 years old, he was convicted of second degree murder and sentenced to serve a state prison term of five years to life. (Pen. Code, § 187.)[1] According to the probation report in the present case, defendant, a youth authority inmate, struck an instructor repeatedly in the head with a pipe until the victim lost consciousness; defendant and a codefendant then escaped. The victim died three days later. Defendant was released on parole in 1972.

*Case No. 00F3309*

In May 2000, defendant was charged with possessing pseudoephedrine with intent to manufacture methamphetamine (Health & Saf. Code, former § 11383, subd. (c)(1); Stats. 1995, ch. 571, § 1, pp. 4419-4420); see now § 11383.5, subd. (c)(1); Stats. 2006, ch. 646, § 3);[2] his prior conviction was alleged as a strike. He pled no contest to possession of methamphetamine in return for dismissal of the strike allegation and a four-year maximum sentence with the possibility of probation.[3] In August 2000, the trial court granted defendant probation, which included his serving 180 days in county jail.

In April 2001, the trial court signed a petition to revoke defendant's probation and issued a bench warrant because defendant had failed to keep his probation officer

---

[1] Undesignated section references are to the Penal Code.

[2] Former Health and Safety Code section 11383 penalized both the possession of pseudoephedrine with intent to manufacture methamphetamine and the possession of various substances with intent to manufacture phencyclidine (PCP). After the cases against defendant that gave rise to this appeal were filed, the Legislature moved the provision on pseudoephedrine to a new statute, Health and Safety Code section 11383.5, while retaining the PCP-related provisions in section 11383.

[3] According to the probation report, police conducted a traffic stop of defendant's car and found materials consistent with the intent to manufacture methamphetamine, including pseudoephedrine and a common cutting agent.

2

informed of his location and his whereabouts were unknown. Defendant was apprehended in May 2001. In June 2001, on the People's motion, the trial court dismissed the petition to revoke probation.

### Case No. 1F6562

In September 2001, a complaint (later deemed an information) was filed charging defendant with manufacturing methamphetamine (count 1; Health & Saf. Code, § 11379.6, subd. (a)), possessing pseudoephedrine with intent to manufacture methamphetamine (count 2; Health & Saf. Code, former § 11383, subd. (c)(1); Stats. 1995, ch. 571, § 1, pp. 4419-4420), and misdemeanor possession of drug paraphernalia (counts 3 & 4; Health & Saf. Code, former § 11364; Stats. 1990, chs. 544, 1664, §§ 1, 4, pp. 2856, 7941); defendant's prior drug conviction and strike were alleged as enhancements. In October 2001, defendant was held to answer.

On June 11, 2002, defendant failed to appear in court, and the trial court issued a bench warrant. Defendant was not located and arrested until December 31, 2009.

On April 13, 2010, the case proceeded to jury trial, along with concurrent hearings on probation violation allegations filed in September 2001. The trial court dismissed count 2 in the interest of justice and bifurcated trial on the prior conviction. Defendant later waived his right to a jury trial.

The evidence at trial showed defendant, when detained, had a functioning laboratory in a shed on a rural parcel of land. Asked if he was manufacturing methamphetamine, defendant said he was doing it only for his own use and no one else was involved.

The jury convicted defendant on counts 1, 3, and 4 in case No. 01F6562. The trial court sustained the probation revocation petitions and found the prior conviction allegations true.

The probation report recommended defendant serve an aggregate state prison term of 18 years 4 months (an aggravated seven-year term on count 1, doubled for the strike,

3

plus a three-year enhancement for the prior drug conviction, plus a 16-month consecutive sentence in case No. 00F3309).

Defense counsel requested that the trial court dismiss defendant's strike because: (1) the strike occurred 44 years ago; (2) defendant's current offense was not a serious or violent felony; (3) it was relatively less serious than other offenses of the same nature in that defendant did not manufacture methamphetamine for financial gain or in large amounts; (4) it was not more serious than defendant's prior convictions; (5) punishment under the three strikes law would be disproportionate to the severity of the current offense; (6) defendant's recent criminal history was a result of his longstanding addiction to controlled substances, which he tried to satisfy by manufacturing methamphetamine solely for his own use; (7) defendant was willing and able to rehabilitate himself through inpatient rehabilitation; (8) defendant's addiction constituted a severe physical and mental condition that significantly reduced his culpability; (9) he displayed remorse for his criminal conduct; (10) he was not deemed dangerous to others; (11) his criminal history was not long or increasing in seriousness; (12) he was cooperative with law enforcement during the investigation; (13) prior to 2005, his record (aside from the strike) consisted of two misdemeanor convictions; and (14) he had not engaged in any criminal conduct since "the time of the incident."[4]

In opposition, the People asserted: Defendant's criminal history dated back almost 50 years, including repeated parole violations, numerous misdemeanor offenses and probation violations, and the commission of a second felony while "on abscond from [p]robation" in case No. 00F3309. His present offense was a "serious and dangerous crime," committed while on probation for a similar offense. In case No. 00F3309, the People already dismissed the strike in order to make defendant eligible for probation

---

[4]    Trial counsel did not assert that defendant's sentence, if not reduced by dismissing the prior strike, would be cruel and unusual under the federal Constitution or the California Constitution.

(which the trial court granted).  Defendant did not accept responsibility for his actions or demonstrate remorse.  "The fact that he absconded from the jurisdiction and was absent for almost eight years shows that he has no desire to live according to anyone's rules but his own."

Finding defendant was not outside the spirit of the three strikes law, the trial court denied his request to strike the strike and sentenced him to serve 18 years 4 months in state prison.  The court also imposed fines and fees we address in part II of the discussion.

DISCUSSION

**I**

*Sentence*

Defendant contends (1) the trial court abused its discretion by denying his request to dismiss the strike because his current offense fell outside the spirit of the three strikes law; and (2) the sentence resulted in an unfair and unconstitutionally long sentence.  Under the second contention, defendant argues the sentence was cruel and unusual under the federal Constitution and the California Constitution.  He also argues the sentence violated the prohibition on double jeopardy because it amounted to renewed punishment for the prior offense.  We are not persuaded.

**A.**

***Three Strikes Law***

In light of defendant's criminal history, we conclude he was not outside the spirit of the three strikes law.

The three strikes law " 'establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as

5

though he [or she] actually fell outside the Three Strikes scheme." ' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

A trial court may properly exercise its discretion to strike a defendant's prior strike under section 1385 only if it finds that "in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the [three strikes] scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

We review a trial court's decision not to strike a strike under the abuse of discretion standard. (*Carmony, supra*, 33 Cal.4th at pp. 374-375.) In the context of sentencing decisions, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) Reversal is justified where the court was unaware of its discretion to strike a prior strike, or refused to do so at least in part for impermissible reasons. (*Id.* at p. 388.) But where the record indicates the court was aware of its discretion and did not state any impermissible reasons for ruling as it did, but instead balanced the relevant facts properly, we will affirm " 'even if we might have ruled differently in the first instance' [citation]." (*Ibid.*)

We first address defendant's criminal history. In addressing his criminal history, defendant fails to show the trial court's ruling was an abuse of discretion. He asserts his "problems are drug-related," but does not show he ever sought treatment for his addiction. After acknowledging methamphetamine manufacturing does pose some risk to the public due to the volatile chemicals, defendant asserts his crime did not endanger the public because he carried it out in "a very rural area in an abandoned shed [with] no one else anywhere nearby." This assertion minimizes defendant's criminal conduct. Defendant engaged in this activity after being convicted of possessing pseudoephedrine

6

with intent to manufacture methamphetamine in case No. 00F3309 and receiving the privilege of probation (available only because the People agreed to dismiss the strike allegation). Defendant's conduct demonstrates a habit of refusing to conform to the law. Defendant also minimizes his repeated violations of probation, above all his seven-year-long flight from justice after he was held to answer in case No. 01F6562.[5]

As to the strike itself, defendant asserts it is not established he meant to kill the victim and he may have meant only to incapacitate him. Again, defendant's assertion minimizes his conduct.

Defendant asserts that absent later crimes of violence, his juvenile murder conviction does not show he has a propensity for violence or poses a risk of future violence to the community. But the trial court did not need to find defendant was actually or potentially violent to find he fell within the spirit of the three strikes law.

Defendant has shown no abuse of discretion in the trial court's assessment of his criminal history, background, character, and prospects. (*Williams, supra,* 17 Cal.4th at p. 161.)

## B.

### *Cruel and Unusual Punishment*

Defendant contends his 18-year 4-month sentence, which he calls a "de facto life without parole sentence" in light of his age, is cruel and unusual under the federal Constitution (U.S. Const., 8th & 14th Amends.) and California Constitution (Cal. Const., Art. I, § 17). Because defendant did not raise this claim in the trial court, it is forfeited. (*People v. Vallejo* (2013) 214 Cal.App.4th 1033, 1045; *People v. Norman* (2003) 109 Cal.App.4th 221, 229; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) But, to forestall

---

[5] Defendant concedes his "departure" showed "a disregard for the court." He thinks it significant, however, that he did not reoffend (so far as the record shows) during that seven-year period. However, the fact defendant did not commit other offenses while absconding from justice for seven years does not place him outside the spirit of the three strikes law.

a subsequent claim of ineffective assistance of counsel (*People v. DeJesus, supra,* 38 Cal.App.4th at p. 27; accord, *People v. Norman, supra*, 109 Cal.App.4th at p. 230), we nevertheless reach the merits.

### 1. *Federal Constitution*

Under the federal proscription of "cruel and unusual punishment," a " 'narrow proportionality principle' . . . 'applies to noncapital sentences.' " (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117] (lead opn. of O'Connor, J.), quoting *Hermelin v. Michigan* (1991) 501 U.S. 957, 996-997 [115 L.Ed.2d 836, 866].)

Objective factors guiding the proportionality analysis include "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Solem v. Helm* (1983) 463 U.S. 277, 292 [77 L.Ed.2d 637, 650].)

Defendant asserts a sentence of 14 years for manufacturing methamphetamine (the base term of seven years, doubled for the strike) is disproportionate to the gravity of that offense because it exceeds the sentence for committing a forcible lewd act on a child under age 14 (§ 288, subd. (b); 5, 8, or 10 years) or for raping a child under age 14 (§ 264, subd. (c)(1); 9, 11, or 13 years).[6] This sort of apples-and-oranges comparison -- first-time offender sentences for crimes in isolation against sentences for other crimes under three strikes -- is unavailing. It is well-settled a recidivist may be punished more severely than a first-time offender. (See *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1512 (*Martinez*) [cruel or unusual punishment under California Constitution].) Defendant fails to show his sentence is disproportionate in light of his recidivist history.

---

**6**     If the sentences for committing a forcible lewd act on a child under the age of 14 or raping a child under the age of 14 were doubled under three strikes, the sentences would range between 10 and 26 years.

Defendant asserts his sentence is harsh and "unconstitutionally long" because it amounts to "almost de facto life without parole," given his age (65 at sentencing, 78 at the time of his earliest possible release on parole).

However, defendant cites no authority holding a sentence that makes release on parole unlikely because of a defendant's advanced age is ipso facto cruel and unusual. He relies only on a dissent from a United States Supreme Court decision (*Lockyer v. Andrade* (2003) 538 U.S. 63, 79 [155 L.Ed.2d 144, 160] (dis. opn. of Souter, J.)), that has no precedential weight, and *People v. Mendez* (2010) 188 Cal.App.4th 47, 63 (*Mendez*), that held a sentence of 88 years to life imposed on an 18-year-old defendant was functionally equivalent to life without possibility of parole (LWOP).[7] For lack of supporting authority, we reject defendant's claim the length of his sentence makes it cruel and unusual.

Defendant has shown no violation of the Eighth Amendment to the United States Constitution.

### 2. California Constitution

Article I, section 17 of the California Constitution forbids "[c]ruel or unusual punishment." Under this provision, too, we conclude defendant has shown no constitutional violation.

"*In re Lynch* (1972) 8 Cal.3d 410 prescribed three 'techniques' for assessing whether punishment is cruel or unusual. In order to determine if a punishment ' "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity" ' (*id.* at p. 424, fn. omitted), courts should (1) 'consider the nature of the offense and/or the offender' (*id.* at p. 425), (2)

---

[7] In *Mendez, supra*, 188 Cal.App.4th 47, 63-68, the court held the sentence was cruel and unusual in light of the principles set forth in *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] (LWOP sentencing cruel and unusual for a juvenile convicted of a nonhomicide offense). *Mendez*'s analysis is inapposite here.

9

compare the punishment to other punishments imposed by the same jurisdiction for more serious offenses (*id.* at p. 426) and (3) compare the punishment to other punishments imposed by other jurisdictions for the same offense (*id.* at p. 427)." (*Martinez, supra,* 71 Cal.App.4th at p. 1510.)

Addressing the first technique, it is well-settled a recidivist may be punished more severely than a first-time offender. (See *Martinez, supra,* 71 Cal.App.4th at p. 1512 [cruel or unusual punishment under California Constitution].) In light of his recidivist history, defendant fails to show his sentence is disproportionate. As to the second technique, as explained in the federal constitution discussion, defendant's comparison of sentences for other offenses is unavailing. Finally, defendant makes no argument regarding the third technique. For these reasons, defendant has not shown a violation of the state constitution's prohibition on cruel and unusual punishment.

## C.

### *Double Jeopardy*

Defendant acknowledges recidivist statutes such as three strikes have survived constitutional challenge. However, he appears to argue, notwithstanding decisions of the United States Supreme Court upholding such statutes (see, e.g., *Monge v. California* (1998) 524 U.S. 721, 728 [141 L.Ed.2d 615, 624]; *Witte v. United States* (1995) 515 U.S. 389, 400 [132 L.Ed.2d 351, 364]), the three strikes law as applied here somehow punishes defendant twice for "his past sins," in violation of the constitutional bar on double jeopardy (U.S. Const., 5th & 14th Amends.). We are not persuaded.

Defendant relies principally on this court's decision in *People v. Carmony* (2005) 127 Cal.App.4th 1066, but that decision does not assist him. There, we held a defendant's 25-years-to-life sentence under three strikes, where the third strike was "an entirely passive, harmless, and technical violation of the [sex offender] registration law" (*id.* at p. 1077) was so disproportionate to his current offense it amounted to punishing the defendant for recidivism rather than for the current offense. (*Id.* at pp. 1080-1081.)

10

Here, defendant was sentenced to serve an aggregate state prison term of 18 years 4 months. This consisted of a seven-year term on count 1, doubled for the strike, plus a three-year enhancement for the prior drug conviction, plus a 16-month consecutive sentence in case No. 00F3309. A 14-year sentence for manufacturing methamphetamine is not disproportional to the gravity of the offense. It is well-settled a recidivist may be punished more severely than a first-time offender. (See *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1512.) Defendant fails to show his sentence is disproportionate in light of his recidivist history. In sum, there is no violation of the prohibition against double jeopardy.

## II

### *Fines*

At sentencing, the trial court imposed several fines that defendant challenges as violations of the prohibition on ex post facto punishment. The Attorney General agrees. So do we.

Among other fines, the trial court imposed a $10 fine under section 1465.7, a $25 fine under Government Code section 70372, a $5 fine under Government Code section 76104.6, and a $15 fine under Government Code section 76104.7. All of these statutes became effective after 2000 and 2001, when defendant committed the crimes for which he was sentenced here.

Section 1465.7 became effective September 30, 2002. (*People v. High* (2004) 119 Cal.App.4th 1192, 1197, fn. 2 (*High*); Stats. 2002, ch. 1124, § 46, pp. 7242-7243.) Government Code section 70372 became effective January 1, 2003. (*High, supra*, at p. 1197, fn. 2; (Stats. 2002, ch. 1082, § 4, pp. 6994-6995.) Government Code section 76104.6 became effective November 3, 2004. (*People v. Batman* (2008) 159 Cal.App.4th 587, 590; Gov. Code, § 76104.6, as approved by voters, Gen. Elec. (Nov. 2, 2004) 37A, Pt. 2 West's Ann. Gov. Code (2005 ed., 2014 supp.).) Government Code section 76104.7 became effective July 12, 2006. (Stats. 2006, ch. 69, § 18.)

11

In *High, supra,* 119 Cal.App.4th at pages 1197-1199, *People v. Batman, supra,* 159 Cal.App.4th at pages 589-591, and *People v. Mejia* (2012) 211 Cal.App.4th 586, 637, the courts concluded the fines levied under the above provisions were punitive in nature and therefore could not be imposed retroactively without violating the prohibition against ex post facto punishment.  Therefore, we must strike the fines imposed under these provisions.

DISPOSITION

The judgment is modified by striking the four fines listed in part II of the discussion.  As modified, the judgment is affirmed.


    HOCH    , J.


We concur:


    HULL    , Acting P. J.


    DUARTE    , J.